UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:20-CV-00045-TBR-LLK

KATHY CAROL JETTON                                                                                   PLAINTIFF

VS.

ANDREW SAUL, Acting Commissioner of Social Security                    DEFENDANT

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Plaintiff filed a complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. [Docket Number ("DN") 1]. Plaintiff's memorandum in support is at DN 11-1, and Defendant's response in opposition is at DN 14. The Court referred the matter, which is now ripe for determination, to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636. [DN 10].

Because Plaintiff's two arguments are unpersuasive and the Administrative Law Judge's ("ALJ's") decision is supported by substantial evidence, the RECOMMENDATION will be that the Court AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

**The ALJ's decision**

The ALJ denied Plaintiff's disability claims at the fifth and final step of the five-step sequential evaluation process, which applies in all Social Security disability cases. First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 1, 2015, when Plaintiff alleges that she became disabled. [DN 8-2 at 18[1]]. Second, the ALJ found that Plaintiff has the following severe, or vocationally significant, impairments: inflammatory bowel disease and migraine headaches. *Id.* Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix 1 of the regulations. *Id.* at 20.

---

[1] Pages references are to the administrative record denominated as such by the Commissioner, which is the number appearing at the bottom of each page of the administrative transcript.

As required in any case that advances beyond Step 3, the ALJ determined Plaintiff's residual functional capacity ("RFC"). The ALJ found that Plaintiff's severe impairments allow her to perform a limited range of medium work. *Id.* Plaintiff can lift/carry/push/pull 50 pounds occasionally and 25 pounds frequently, stand/walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday, frequently stoop; and occasionally kneel, crouch, or crawl. *Id.* Of particular significance in this case is the fact that the ALJ found Plaintiff "would be off tasks up to 10 minutes per hour during a workday" for bathroom breaks due to her inflammatory bowel disease. *Id.*

Fourth, the ALJ found that Plaintiff is unable to perform any past relevant work. *Id.* at 24. Fifth, the ALJ found that Plaintiff has not been under a disability through the December 19, 2018 decision date because there exist a significant number of jobs in the national economy she can perform. *Id.* at 24-25. Specifically, the ALJ accepted the testimony of vocational expert ("VE") Kenneth Boaz that an individual with Plaintiff's RFC can "perform the requirements of representative occupations such as medium, unskilled [specific vocational preparation number 2] SVP2 work as a janitor [Dictionary of Occupational Titles] DOT #381.687-018 (27,000 jobs in the national economy); sexton - church DOT #389.667-010 (210,000); and house cleaner DOT #301.687-014 (66,000)." *Id.* at 25.

## Legal standards

As noted at the outset, Plaintiff makes two arguments. The Court must evaluate these arguments under different standards of review.

Plaintiff's first argument is that VE Boaz' vocational testimony does not substantially support the ALJ's decision in light of post-hearing rebuttal evidence by another VE, Leslie Lloyd, Rh.D. (doctor of rehabilitation), which the ALJ wrongly rejected. [DN 11-1 at 10-16]. Review of this argument is governed by Sentence 4 of 42 U.S.C. § 405(g), which provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security…." Section 405(g).

Review under Sentence 4 is restricted to the evidence that was before the ALJ and consists of a determination of whether the ALJ's decision is "supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard, while requiring "more than a mere scintilla" of evidence, is not a high bar; substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Thus, the Court will defer to the ALJ's decision if there is substantial evidence to support it, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

Plaintiff's second argument is that this case must be remanded to the ALJ for consideration of VE Boaz' testimony in other cases that were before other ALJs. [DN 11-1 at 16-19]. Review of this argument is governed by Sentence 6 of 42 U.S.C. § 405(g), which provides that "[t]he court … may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding …." Section 405(g). In other words, the Court may consider evidence that was not before the ALJ (i.e., VE Boaz' testimony in other cases) only for the limited purpose of determining whether to grant a Sentence 6 remand for consideration of that evidence.

Under Sentence 6, Plaintiff bears the burden of showing that remand is appropriate. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). New evidence is material "only if there is a reasonable probability that the [ALJ] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* Good cause is present if there is a "reasonable justification for the failure to acquire and present the evidence" to the ALJ. *Id.*

**Discussion**

The ALJ found that Plaintiff suffers from severe inflammatory bowel disease, which requires that she "be off task up to 10 minutes per hour during a workday" to visit the restroom. [DN 8-2 at 18, 20]. The ALJ concluded that Plaintiff is not disabled because, despite her impairments, she retains the ability to perform a significant number of jobs in the national economy, specifically, the jobs of janitor as described in the Dictionary of Occupational Titles ("DOT") § 381.687-018, church sexton (janitor) DOT § 389.667-010, and house cleaner DOT § 301.687-014. *Id.* at 24-25.

The ALJ based his conclusion that Plaintiff can perform these jobs on acceptance of the testimony of vocational expert ("VE") Kenneth Boaz, which (mirroring the ALJ's finding) contemplated an individual who "would have to be off-task for up to ten minutes per hour of any workday." *Id.* at 62. VE Boaz explained that he based his testimony on "past experience" with people who, like Plaintiff, require frequent restroom visits and associated "time studies on jobs." [DN 8-2 at 64, 66].

After the administrative hearing, Plaintiff obtained what Plaintiff repeatedly characterizes as a "rebuttal report" or "rebuttal evidence" from another VE, Leslie Lloyd, Rh.D. (doctor of rehabilitation). [Characterization at DN 11-1 at 1, 3, 10 referencing report at DN 8-6 at 278-81]. Plaintiff submitted Dr. Lloyd's report to the ALJ, but (in his written decision denying Plaintiff's disability claim) the ALJ found the report to be "unpersuasive." [DN 8-2 at 25].[2]

**The vocational testimony substantially supports the ALJ's decision.**

Plaintiff makes two arguments. First, she argues that "[t]he ALJ's finding that [she] can perform work which exists in significant numbers in the national economy relies on arbitrary and inaccurate

---

[2] In its entirety, the relevant part of the ALJ's decision states as follows [DN 8-2 at 25]:

The undersigned finds this report to be unpersuasive. The vocational expert testimony at the hearing was based, among other things, on his experience with individuals performing the types of jobs indicated as being capable of being performed and that these jobs could allow for the unpredictable need for bathroom breaks and still be performed. The undersigned finds the vocational expert testimony to be persuasive.

testimony from the VE and is, therefore, not supported by substantial evidence." [DN 11-1 at 10]. The argument is unpersuasive for three reasons.

First, a "vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case de novo, resolve conflicts in [vocational and other] evidence, or decide questions of credibility."); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) ("The credibility of the vocational expert's testimony … was properly within the province of the ALJ to determine.").

Second, Plaintiff cites and the Court finds no authority for the proposition that a reviewing court may second-guess an ALJ's decision to credit one vocational opinion and discredit another one. *See Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 158 (6th Cir. 2009) ("[W]hile the ALJ is certainly authorized to take administrative notice of job data from various sources, including the testimony of Poe's own vocational expert, he was not required to accept Breslin's [Poe's VE] opinion over that of the vocational expert …."); *Luna v. Soc. Sec. Admin.*, No. 1:19-CV-1414, 2020 WL 5549318, at *17 (N.D. Ohio Aug. 28, 2020) (report adopted) (rejecting Luna's arguments, which "[a]t bottom, … asks the Court to choose between competing vocational opinions."); *White v. Saul*, No. 5:18-CV-362-JMH, 2019 WL 4684445, at *5 (E.D. Ky. Sept. 25, 2019) ("ALJs may assess dueling vocational opinions, but they are not required to do so.")

Third, for the reasons below, VE Boaz' testimony was not "arbitrary and inaccurate" (as Plaintiff contends).

Plaintiff has attempted to discredit VE Boaz' testimony on three separate occasions: during cross-examination (of VE Boaz at the administrative hearing), by way of Dr. Lloyd's post-hearing "rebuttal report," and in new arguments first presented to this Court.

During cross-examination, VE Boaz testified that the identified jobs would remain even if the off-task periods occur at unpredictable intervals throughout the day. [DN 8-2 at 64]. VE Boaz agreed with Plaintiff that "effectively what you're testifying" to is that "the worker can be a janitor [because a janitor can] use the bathroom whenever they want" and then clean the toilet. *Id.*[3]

In her post-hearing "rebuttal report," Dr. Lloyd responded to two specific questions asked by Plaintiff. The first question concerned the tolerance of employers in the national economy "as a general matter" with respect to workers who need to be "off task 10 minutes of every hour during the work day." [DN 8-6 at 278]. Plaintiff's characterization of Dr. Lloyd's answer as "rebutting" VE Boaz' testimony is unpersuasive for two reasons. First, there is no indication Dr. Lloyd was aware that VE Boaz based his testimony (not on "general" principles but rather) on "past experience" and "time studies." [DN 8-2 at 64, 66]. Second, the ALJ found and the hypothetical contemplated that the worker would be off task "up to" (but not including) 10 minutes per hour during the workday, and VE Boaz admitted that "ten minutes is right where I do a cut-off at so ten and below is kind of can do work but it's … kind of right on the borderline." *Id.* at 20, 62.

The second question was: "With respect to janitors, sextons, and cleaners, is there any **proof** *(emphasis added)* that a worker with irritable bowel syndrome needing to visit the bathroom 10 minutes an hour would be able to perform those jobs adequately merely because their responsibilities include cleaning bathrooms?" [DN 8-6 at 278]. As indicated above, in this case, the "proof" was VE Boaz' "past experience" and "time studies," [DN 8-2 at 64, 66], of which Dr. Lloyd was unaware. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152-53 (2019) (When offering testimony, VEs may "invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'") (quoting Social Security Ruling, SSR

---

[3] The remainder of cross-examination focused on the exertional aspects of the hypothetical (not at issue here). [DN 8-2 at 64].

00-4p, 65 Fed. Reg. 75760 (2000)). Dr. Lloyd indicated that the jobs in question require that toilets be cleaned either "daily, or once per shift" and that a worker who requires ten-minute bathroom breaks every hour could not adequately perform shift-based jobs. [DN 8-6 at 280].[4] However, there is no indication that VE Boaz' "past experience" and "time studies" involved shift-based jobs.

In her brief before this Court, Plaintiff makes additional arguments in support of her position that the vocational testimony was "arbitrary and inaccurate." [DN 11-1 at 10]. Admittedly, the arguments have a certain intuitive appeal.[5] However, a reviewing court may not consider evidence and arguments

---

[4] According to Dr. Lloyd [DN 8-6 at 280}: "In the event the employee was to attempt to re-clean each toilet after he or she used it, then it would become impractical, and quite unlikely, the worker would be able to clean all toilets required during a work shift and would not adequately perform the required job duties."

[5] Plaintiff makes her arguments by way of rhetorical questions as follows [DN 11-1 at 11-13]:

Among the tasks a janitor is expected to perform are transporting raw materials and products between departments or buildings; cleaning industrial equipment; cutting grass or shoveling snow; and operating an industrial truck to transport materials around a plant. Dictionary of Occupational Titles, 381.687-018. … What if Mrs. Jetton is transporting raw materials in a loaded truck between departments at this industrial plant when, as her residual functional capacity indicates will occur, she needs a ten-minute bathroom break due to diarrhea? Where is the bathroom? Is Mrs. Jetton permitted to park the vehicle, halting the transport of the materials which are presumably important to this industrial operation, find this bathroom however far away she must trek to reach it, and then return to her post only to repeat this exercise 50 minutes thereafter? What if she is mowing when this occurs?

… The DOT states that a sexton "takes care of church buildings and furnishings" which includes cleaning and routine maintenance; taking care of sacred vessels and preparing the altar for religious services; tending to the church boiler and furnace; and acting as an usher during church services, lighting candles during church services, and conducting visitors between services. Dictionary of Occupational Titles, 389.687-010. It is unclear the procedure Mrs. Jetton is to follow when, unpredictably ten minutes of every hour in the church services, she must find the nearest bathroom because of her irritable bowel syndrome. Might the bathroom be occupied by a churchgoer? Will the church ensure Mrs. Jetton has her own personal bathroom available to address her symptoms? Might this soon become a distraction the church is unwilling to tolerate?

Finally, VE Boaz has informed Mrs. Jetton that she can work as a housecleaner or "day worker" as the DOT calls it, which entails cleaning and dusting furnishings, hallways, and lavatories; changing and making beds; washing and ironing clothing by hand or machine; vacuuming carpets; watching children to keep them out of mischief; and washing windows or waxing and polishing floors. Dictionary of Occupational Titles, 301.687-014. One can assume this worker is likely in either a hotel or residential environment. … Are we to believe that the worker is permitted to have a ten-minute bowel movement in each room she visits, or every other room she visits, throughout the hotel during her workday? … Are we to believe every homeowner this cleaner visits will tolerate a ten-minute bowel movement in their home every hour from the cleaner that they are paying to clean the house? What if the homeowners or tenants, the paying customers, are home when the cleaner comes by – might they or their children be occupying these bathrooms to which Mrs. Jetton must have ready access every hour to accommodate her symptoms?

not presented to the ALJ for purposes of concluding that the vocational testimony was not substantial. *See Luna v. Soc. Sec. Admin.*, No. 1:19-CV-1414, 2020 WL 5549318, at *17 (N.D. Ohio Aug. 28, 2020) (report adopted) (rejecting Luna's arguments, which "[a]t bottom, … asks the Court to choose between competing vocational opinions."); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1156 (2019) (Although the VE refused to give Biestek "specific [supporting] data" on privacy grounds, Biestek could and should have "probe[d] the strength of [the vocational] testimony by asking [the VE] about (for example) her sources and methods -- where she got the information at issue and how she analyzed it and derived her conclusions."); *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) ("[T]he ALJ is under no [general] obligation to investigate the accuracy of the VE's testimony …. This obligation falls to the plaintiff's counsel ….").

**VE Boaz' testimony in other cases is not material to his testimony in this case.**

Pursuant to Sentence 6 of 42 U.S.C. § 405(g), "[t]he court … may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding …." Section 405(g). In other words, the Court may consider evidence that was not before the ALJ only for the limited purpose of determining whether to grant a Sentence 6 remand for consideration of new and material evidence.

In the month of the ALJ's decision in this case (December 2018), Plaintiff's counsel represented three claimants other than Plaintiff whose cases were assigned to ALJs other than the ALJ in this case. [DN 11-1 at 16-17]. The three cases proceeded to administrative hearings at which VE Boaz testified. *Id.* Plaintiff alleges that, in these cases, VE Boaz "testifies inconsistently on the issue of tolerable time off-task in the workplace." *Id.* at 17. Plaintiff argues that "[a]lternatively, [her] claim should be remanded to the Commissioner pursuant to Sentence 6 of 42 U.S.C. § 405(g) because of new and material evidence relevant to the VE's testimony which the ALJ did not have [i.e., Mr. Boaz' testimony in other cases] and which is likely to change the decision." *Id.* at 17.

Evidence is "material" if there is "a reasonable probability that the [ALJ] would have reached a different disposition of the disability claim if presented with the new evidence." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Mr. Boaz' testimony in other cases is not material because it is distinguishable from and consistent with his testimony in this case. As indicated above, the testimony in this case was that Plaintiff can perform certain jobs even if she "would have to be off-task for up to ten minutes per hour of any workday," for purposes of utilizing a readily available bathroom. [DN 8-2 at 62]. In contrast, the testimony in the cases relied on by Plaintiff contemplated: 1) A claimant needing "2 30-minute breaks in additional to the normal breaks you'd expect a worker to make," for an unknown purpose, which may or may not be readily accommodated on the job site; 2) A claimant needing "2 or more additional 15-minute breaks throughout the workday for relief of [unknown] symptoms"; and 3) A claimant needing to "take at least 2 breaks during the day, of about 30 minutes time, in order to lay down and kind of release all that tension in his back." [DN 11-1 at 17-18]. The employers at issue in this case (e.g., a church or homeowner) would likely perceive an ongoing need for bathroom breaks differently than, for example, a production line employer would view an ongoing need to lie down. Additionally, as the Commissioner suggests, Plaintiff fails to demonstrate that Mr. Boaz' testimony from other cases is material because she "does not offer the context surrounding" that testimony. [DN 14 at 11].

## RECOMMENDATION

Because Plaintiff's two arguments are unpersuasive and the Administrative Law Judge's ("ALJ's") decision is supported by substantial evidence, the Magistrate Judge RECOMMENDS that the Court AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

November 24, 2020

Lanny King, Magistrate Judge
United States District Court

**NOTICE**

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984).

November 24, 2020

Lanny King, Magistrate Judge
United States District Court